# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AMY J.,

                          Plaintiff,

            v.                                    Case No. 25-CV-643

FRANK J. BISIGNANO,[1]
Commissioner of the Social Security Administration,

                          Defendant.

# DECISION AND ORDER

## 1. Introduction

Alleging she has been disabled since March 25, 2019 (Tr. 13, 1439), Plaintiff Amy J. seeks disability insurance benefits. Her date last insured was December 31, 2022. (Tr. 13, 1440.) After her application was denied initially (Tr. 65–76) and upon reconsideration (Tr. 124–28), a hearing was held before Administrative Law Judge (ALJ) Brent C. Bedwell on September 1, 2021 (Tr. 30–63). On December 14, 2021, the ALJ issued a written decision concluding that Plaintiff was not disabled. (Tr. 13–24.)

---

[1] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

The Appeals Council denied Plaintiff's request for review on April 11, 2022. (Tr. 1–6.) Plaintiff subsequently filed an appeal under 42 U.S.C. § 405(g) in the Eastern District of Wisconsin (Tr. 1529–32.) On December 22, 2022, Magistrate Judge Stephen Dries approved a joint stipulation for remand (Tr. 1533–37), and a new hearing was held before ALJ Bedwell on October 11, 2023. (Tr. 1466–94.)

On November 28, 2023, ALJ Bedwell issued a written decision concluding that Plaintiff was not disabled. (Tr. 1439–58.) After the Appeals Council denied Plaintiff's request for review on February 26, 2025 (Tr. 1429–32), she filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 7), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since March 25, 2019, the alleged onset date." (Tr. 1441.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4) (ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20

C.F.R. § 404.1522(a). The ALJ concluded that Plaintiff has the following severe impairments: right carpal tunnel syndrome, status post surgery; lumbar and cervical degenerative disc disease, status post cervical fusion; migraine headaches, depression, anxiety, and attention deficit hyperactivity disorder (ADHD). (Tr. 1442.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 1442.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, and scaffolds; can do occasional stooping, crouching, kneeling, crawling, and climbing of ramps and stairs; and can do frequent handling and fingering. The claimant can maintain attention, concentration, persistence, and pace for simple and repetitive tasks with regularly scheduled breaks; can perform jobs that involve routine job tasks and instructions; can perform jobs having only occasional decision-making and changes in work setting; and can have occasional interaction with the public, coworkers, and supervisors.

(Tr. 1445.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Plaintiff was "unable to perform any past relevant work." (Tr. 1455.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded there were jobs Plaintiff could perform, including sorter (Dictionary of Occupational Titles (DOT) Number 521.687-086), inspector (DOT Number 726.684-110), and table worker (DOT Number 739.687-182). (Tr. 1457.) Therefore, Plaintiff was not disabled.

4

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

Plaintiff first argues that the ALJ's RFC determination did not comply with SSR 96-8p because he failed to adequately evaluate her migraine headaches, concentrating, persisting, or maintaining pace limitations, upper extremity limitations, and fatigue. (ECF No. 14 at 4.) Plaintiff also argues that the ALJ's step five determination was not supported by substantial evidence because the ALJ failed to include a limitation in the RFC addressing exposure to hazards. (*Id*. at 15.) Lastly, she contends that the ALJ's evaluation of her symptoms did not comply with SSR 16-3p. (*Id*. at 20.)

For these reasons, Plaintiff asks the court to reverse and remand the ALJ's decision for additional proceedings consistent with the regulations. (*Id*. at 22.)

### 4.1. The Residual Functional Capacity Assessment

#### 4.1.1. Migraines

The ALJ found that Plaintiff suffered severe migraine headaches but concluded that her symptoms were less severe than alleged and were adequately managed with medication. (Tr. 1446–49.) Plaintiff contends that the ALJ erred by failing to assess how her severe migraines affected her ability to work after making the severity determination. (ECF No. 14 at 5–6.) She also argues that the ALJ provided improper reasons for discounting her migraine symptoms. (*Id*. at 6.) In response, the Commissioner argues that no medical provider offered a persuasive opinion indicating Plaintiff's migraines imposed greater limitations than those recognized by the ALJ. (ECF No. 21 at 9–10.)

In evaluating Plaintiff's migraines the ALJ stated:

the record suggests that symptoms are less severe than alleged and that the claimant experiences adequate management with medication. For example, despite reports of frequent migraines lasting a few hours and up to two days, the claimant has not sought emergency or urgent treatment for migraine symptoms. Moreover, while she reported having a migraine during a June 2020 physical therapy visit (and having had three migraines that week), there is no indication as to decreased participation or displays of discomfort (18F/102). Again, when reporting having had a migraine almost every day during the week preceding her July 15, 2020 physical therapy visit, there is no indication as to missed appointment or decreased participation.

(Tr. 1449.) The ALJ further stated that in August 2022 Plaintiff's primary care doctor noted she was taking migraine medication three to four times per week, which usually resolved her migraines. (*Id*.) Based on this, the ALJ concluded that medication, "coupled with the lack of urgent care or trials of alternate treatment, suggests benefit." (*Id*.)

"In assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the care record were considered and resolved." SSR 96-8p.

After finding that Plaintiff's migraines qualified as a severe impairment, the ALJ was required to explain how the RFC accommodated her migraines or why no

accommodation was necessary. SSR 96-8p; *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (remanding because the ALJ failed to explain how evidence of the plaintiff's migraines influenced the RFC determination).

Plaintiff testified that she experiences migraines four to five times a week, lasting anywhere from six hours to several days. (Tr. 48, 250.) During these episodes, she takes medication and needs to lie down in a dark room. (Tr. 48.) Her primary care doctor reported that her migraines involved "sensitivity to light and noise" as well as "occasional nausea and vomiting." (Tr. 1874–75).

The ALJ failed to explain how he concluded that Plaintiff could work full-time despite finding that she had severe migraines, nor did he clarify whether the RFC included any limitations related to her migraines. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (remanding where the ALJ failed to discuss how the plaintiff's headaches affected her ability to work). He also did not explain how Plaintiff's symptoms were consistent with her ability to maintain full-time employment, failing to build a logical bridge between the evidence and his conclusion. *See Moon*, 763 F.3d at 721 (finding the ALJ failed to build a logical bridge between the evidence and the conclusion that the plaintiff could perform sedentary work).

Additionally, the ALJ did not provide sufficient reasons for discounting Plaintiff's migraine symptoms. The ALJ noted that Plaintiff did not appear uncomfortable during one physical therapy visit and did not miss subsequent appointments due to her

migraines, but this information provides little insight into the severity or persistence of her symptoms. *See McCollim v. Saul*, No. 18-CV-2028, 2020 U.S. Dist. LEXIS 6134, at *19, 2020 WL 206414, at *6 (E.D. Wis. Jan. 13, 2020) (explaining that "the fact that [Plaintiff] denied having a headache during two medical visits … says little about the persistence of her migraine symptoms"). He also failed to discuss the reasons given by Plaintiff for not seeking emergency or urgent treatment for her migraines before using this as a basis to discount the severity of her symptoms. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record … without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

Ultimately, the ALJ failed to build the required logical bridge between the evidence cited and the RFC determination. *See Lothridge v. Saul*, 984 F.3d 1227, 1333 (7th Cir. 2021). This error is not harmless because the jobs identified by the vocational expert require an employee to remain on task for at least 90 percent of an eight-hour workday. (Tr. 1482.) On remand, the ALJ should provide adequate support for the RFC determination and explain how the evidence supports his conclusion.

### 4.1.2.   Concentrating, Persisting, or Maintaining Pace

Plaintiff argues that the ALJ erred by failing to include sufficient limitations in the RFC to address her deficits in maintaining concentration, persistence, or pace. (ECF No. 14 at 9.) She asserts that restricting her to "simple and repetitive tasks, routine job

tasks and instructions, and occasional decision-making and changes" does not adequately account for these deficits. (*Id*. at 10.) In response, the Commissioner contends that limiting an individual to "simple, repetitive" tasks may appropriately address limitations in maintaining concentration, persistence, or pace. (ECF No. 21 at 16.)

An ALJ "has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations." *Recha v. Saul*, 843 Fed. Appx. 1, 4 (7th Cir. 2021). While the ALJ does not need to use specific terms for limitations involving concentrating, persisting, or maintaining pace, the decision must "adequately account for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Both the hypothetical questions to the vocational expert and the RFC assessment must reflect the claimant's limitations as supported by the record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

The ALJ addressed Plaintiff's limitations in maintaining concentration, persistence, or pace when he asked the vocational expert whether a person who could not "maintain attention, concentration, persistence and pace for simple and repetitive tasks with regularly scheduled breaks over the workday" could perform any jobs in the national economy. (Tr. 1481.) The vocational expert testified that jobs were available for someone with those restrictions: sorter, inspector, and table worker. (Tr. 1482.) The expert was then asked about employer tolerance for absences and off-task behavior in these jobs. (*Id*.) According to the expert, two or more unexcused absences in a month would be

preclusive, and employers would not tolerate employees being off task for more than 10 percent of an eight-hour workday. (Tr. 1482.)

At step three, the ALJ found that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 1444.) The ALJ acknowledged Plaintiff's reports of difficulty concentrating and completing tasks, but noted that at various times she reported

> that she tends to personal care; prepares simple meals daily; tends to household chores as physically able; leaves her home daily, and travels by walking, driving, and riding a bicycle; shops in stores and by computer/mail; is able to handle money, although she uses autopay for bills; and spends time watching movies and talking with family; and regularly attends church.

(Tr. 1444.) The ALJ further observed that no medical provider documented significant or ongoing deficits in this area. (*Id.*) He concluded that, although Plaintiff has limitations in this domain, the evidence does not support finding them to be more than moderate. (*Id.*)

The ALJ did not provide a narrative discussion explaining how the RFC accounts for Plaintiff's limitations in concentrating, persisting, or maintaining pace. *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (requiring the ALJ to build a logical bridge between limitations and the RFC finding). The RFC analysis lacks any discussion about Plaintiff's ability to work despite having moderate limitations in concentrating, persisting, or maintaining pace. *See Moy v. Bisignano*, 142 F.4th 546, 555 (7th Cir. 2025) (explaining that "to enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the claimant's ability to work").

The Commissioner correctly notes that, in some cases, restricting an individual to "simple, repetitive tasks" may sufficiently address limitations in maintaining concentration, persistence, or pace. However, the ALJ must still connect the evidence cited to the limitations included in the RFC. *See Lothridge*, 984 F.3d at 1233 (remanding where the ALJ limited plaintiff to "simple instructions and tasks" but did not address her ability to stay on task for a full workday or perform at the required speed). The ALJ's analysis says nothing about whether Plaintiff can work at a sustained pace for an eight-hour workday or remain on task.

Without a clearer explanation of how the RFC aligns with Plaintiff's ability to work full-time, the court cannot conclude that the ALJ's decision is supported by substantial evidence. On remand, the ALJ should include a narrative discussion explaining how the RFC finding properly accounts for Plaintiff's moderate limitations in maintaining concentration, persistence, or pace.

### 4.1.3. Upper Extremity Limitations

Plaintiff argues that the ALJ did not adequately explain how the evidence of her upper extremity limitations supports the conclusion that she can perform frequent handling and fingering. (ECF No. 14 at 12.) She further argues that the ALJ improperly interpreted new medical evidence instead of submitting it for medical review. (*Id.* at 13.) Plaintiff maintains that, if a medical expert had reviewed the new evidence, the state agency consultants may have changed their opinions regarding her limitations. (*Id.*) In

response, the Commissioner argues that Plaintiff did not provide a medical opinion supporting greater limitations than those found by the ALJ and that the ALJ was not required to solicit a medical opinion for the new evidence. (ECF No. 21 at 11–12.)

An ALJ must obtain a medical opinion when there is new and potentially decisive evidence that was not reviewed by state agency consultants. *Kemplen v. Saul*, 844 F. App'x 883, 888 (7th Cir. 2021). An ALJ cannot "play [] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). "It is well-established that ALJs may not rely on a state agency consultant's assessment if later evidence 'reasonably could have changed' the opinion." *Michelle Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023) (citing *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)).

In June 2022 an EMG revealed that Plaintiff had mild right carpal tunnel syndrome. (Tr. 1891.) A thoracic MRI in December 2022 showed moderate disc height loss and narrowing. (Tr. 2016.) In April 2023 Plaintiff was diagnosed with right carpal tunnel syndrome and right median nerve compression at the elbow. (Tr. 2159.) The following month, a lumbar MRI indicated sacroiliitis and lower lumbosacral facet joint capsulitis. (Tr. 2133.) In June 2023 Plaintiff was diagnosed with ankylosing spondylitis. (Tr. 2136.) State agency medical consultants did not review this evidence.

The ALJ erred by failing to submit this new and potentially decisive medical evidence for expert review. By independently evaluating Plaintiff's updated medical

records, the ALJ exceeded his role as an adjudicator. *See Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022). The diagnoses of right carpal tunnel syndrome, right median nerve compression at the elbow, and ankylosing spondylitis support Plaintiff's reports of worsening conditions. These findings reasonably could have affected the state agency consultants' opinions regarding her ability to handle and finger. *See Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017) (explaining that opinions from reviewing physicians are "essentially worthless" when they do not have access to the full record).

Notably, the ALJ acknowledged that the updated medical records supported greater exertional and postural limitations than those identified by the state agency consultants. (Tr. 1453.) Therefore, the ALJ should have submitted this evidence for medical review. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where the ALJ failed to submit new and potentially decisive medical evidence for expert review).

As for the Commissioner's argument that Plaintiff was required to provide a medical opinion showing greater limitations than those found by the ALJ (ECF No. 21 at 12), the Seventh Circuit Court of Appeals has clarified that a claimant's burden is to present medical evidence–not medical opinions–to support a disability finding. *Kemplen*, 844 F. App'x at 887 (explaining that the claimant's burden is to "produce evidence, not opinions"). Here, Plaintiff submitted new and potentially decisive medical evidence regarding her upper extremity limitations. The ALJ was required to seek expert medical

review of that evidence rather than interpret it himself. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (remanding where the ALJ improperly interpreted MRI results "without the benefit of an expert opinion").

On remand, the ALJ should submit Plaintiff's updated records for medical review and reevaluate her handling and fingering limitations accordingly.

### 4.1.4. Fatigue

Plaintiff argues that the ALJ erred by failing to provide a narrative explanation of how the RFC accounts for her fatigue. (ECF No. 14 at 15.) The Commissioner argues that the ALJ reasonably addressed Plaintiff's fatigue and that she did not offer a persuasive medical opinion supporting greater limitations. (ECF No. 21 at 11.)

At the first hearing Plaintiff testified that her insomnia affects her anxiety and ability to concentrate. (Tr. 49–50.) She also reported needing to take naps when her medications made her drowsy. (Tr. 49, 1477.) At the second hearing Plaintiff stated that her exhaustion has worsened since the first hearing. (Tr. 1477.)

The ALJ stated that the RFC limitations "contemplate any potential fatigue associated with the claimant's subjective reports of poor sleep." (Tr. 1452.) Besides this, the ALJ did not evaluate Plaintiff's fatigue. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (remanding where the ALJ "failed to articulate adequately the bases for his conclusions"). If the ALJ intended to credit Plaintiff's complaints of fatigue, he needed to include a narrative discussion describing how the evidence supported his conclusion. *See*

SSR 96-8p. The ALJ also should have considered the intensity and persistence of Plaintiff's symptoms and determined the extent to which they limit her ability to perform work-related activities. *Id*.

On remand, the ALJ should include a narrative discussion explaining how the RFC accounts for Plaintiff's reports of fatigue and how the evidence supports the conclusion.

### 4.2. The ALJ's Five-Step Determination

Plaintiff argues that the ALJ erred by failing to include in the RFC a limitation to avoid concentrated exposure to hazards. (ECF No. 14 at 16.) She contends that the state agency physician recommended this limitation, but that the ALJ omitted it from the RFC without explanation. (*Id*.) Plaintiff further argues that the ALJ's Step Five determination was not supported by substantial evidence because the vocational expert was not presented with the totality of her limitations. (*Id*. at 18.) The Commissioner responds that this omission was harmless. (ECF No. 21 at 6.)

State agency medical consultant Ronald Shaw opined that Plaintiff required a "postural limitation of frequent stooping, kneeling, crouching, crawling, and climbing; and that allows her to avoid concentrated exposure to hazards." (Tr. 1453.) The ALJ found Dr. Shaw's assessment "somewhat persuasive." (*Id*.) He concluded that Dr. Shaw's opinion was supported by and consistent with the medical evidence, but that Plaintiff's subjective reports and updated medical records warranted greater exertional and postural limitations. The ALJ reflected this in the RFC by limiting Plaintiff to occasional

(rather than frequent) stooping, kneeling, crawling, and climbing. (Tr. 1445.) However, the RFC did not include a limitation to avoid concentrated exposure to hazards. (*Id.*)

When an ALJ finds opinion evidence persuasive, he must explain why he accepted some of the doctor's findings but not others. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (explaining that an ALJ must explain the weight given to a state agency physician's opinion). Here, the ALJ expressed no disagreement with Dr. Shaw's assessment but failed to explain why he did not include the limitation to avoid concentrated exposure to hazards in the RFC. *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted").

The court cannot determine whether the ALJ properly evaluated this limitation because he provided no reason for omitting it from the RFC. *See Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (explaining that the court cannot evaluate whether the ALJ properly rejected evidence when the ALJ fails to explain his reasoning). And because he did not do so, his decision to deny benefits does not satisfy the substantial evidence standard. *See Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018).

The court also cannot say that the vocational expert's testimony would have been the same if the ALJ had included a limitation to avoid concentrated exposure to hazards in the hypothetical. *See Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004) (holding that when the hypothetical question to the vocational expert does not include all medically

supported limitations, the ALJ's decision cannot stand). Two of the three jobs identified by the vocational expert, sorter and table worker, involve the use of a conveyor belt, which may be inconsistent with a limitation to avoid concentrated exposure to hazards. *See Gregory B. v. Kijakazi*, No. 1:20-CV-01906-DLP-JMS, 2022 U.S. LEXIS 25809, at \*15, 2022 WL 444066, at \*5 (S.D. Ind. Feb. 11, 2022). This leaves only the 9,000 inspector jobs, which the ALJ did not find significant.

On remand, the ALJ should articulate why he did not include a limitation to avoid concentrated exposure to hazards in the RFC despite finding Dr. Shaw's opinion somewhat persuasive. If the ALJ adopts this limitation in the RFC, he must also include it in the hypothetical question to the vocational expert.

### 4.3. The ALJ's Evaluation of Alleged Symptoms

Lastly, Plaintiff argues that the ALJ failed to follow the requirements of SSR 16-3p when evaluating her symptoms. (ECF No. 14 at 20.) Specifically, she contends that the ALJ erred by failing to acknowledge that her activity level decreased between her alleged onset date and the second administrative hearing. (*Id*.) Plaintiff also argues that the ALJ did not explain how her reported activities contradicted her alleged symptoms. (*Id*. at 21.) The Commissioner contends that the ALJ reasonably explained why he determined Plaintiff's alleged symptoms were inconsistent with her reported activities. (ECF No. 21 at 8.)

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*.

In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester*, 920 F.3d at 510; *Summers*, 864 F.3d at 528.

In discussing Plaintiff's functional capacity, the ALJ found that the "nature and scope of [] [Plaintiff's] reported activities suggest greater physical and mental capacity than alleged." (Tr. 1452.) The ALJ then provided a summary of Plaintiff's reports to her providers about her daily activities and concluded that,

> [w]hile these activities do not equate directly to the ability to perform full time work, they demonstrate that, despite experiencing symptoms of her physical and mental impairments, she remained able to engage in a number of normal day-to-day activities, many of which involve at least a sedentary level of exertion, as well as the some of the mental abilities and social interactions necessary for obtaining and maintaining employment. While the claimant testified to some decrease in daily activity over time, this is difficult to attribute to her impairments, as treatment notes fail to document a significant decline in mental or physical function.

(Tr. 1452.)

Although the ALJ listed several activities Plaintiff reported to her providers, he did not analyze how these activities were inconsistent with her statements about the severity of her symptoms. The ALJ's discussion is largely a summary of the evidence, without explaining how it supports his findings. *See John R. R. v. Comm'r of Soc. Sec.*, No. 2:18-CV-487-MGG, 2020 U.S. Dist. LEXIS 54800, at *24, 2020 WL 1502847, at *9 (N.D. Ind. Mar. 30, 2020) (holding that "[a] summary of evidence does not substitute for analysis of

evidence"). An ALJ may not simply recite evidence without linking it to his conclusions. *See Steadman v. Saul*, No. 20-CV-190, 2021 U.S. Dist. LEXIS 53169, at *8, 2021 WL 1087042, at *3 (E.D. Wis. Mar. 22, 2021) (explaining that the ALJ cannot merely recite the evidence but must connect the evidence to his conclusions).

Additionally, the ALJ did not address Plaintiff's most recent testimony that she could no longer walk, used an electric wheelchair, no longer exercised, and struggled to do even simple activities, such as coloring, without pain. (Tr. 1452, 1476.) The ALJ should have explained whether he found Plaintiff's most recent testimony about her limitations credible. *See* SSR 16-3p ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; *an individual's statements about the intensity, persistence, and limiting effects of symptoms … "*) (emphasis added); *see also Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996) (explaining that ignoring an entire line of evidence falls below the minimal level of required articulation). The ALJ also improperly discounted Plaintiff's testimony about her declining mental and physical abilities based solely on a lack of objective evidence. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (explaining that "a lack of medical evidence alone is an insufficient reason to discredit testimony").

In sum, the ALJ failed to explain how Plaintiff's reports to her providers about her daily activities conflicted with her statements about the severity of her symptoms. The ALJ also improperly ignored Plaintiff's testimony about the decline in her activities. On

remand, the ALJ should explain how Plaintiff's reported activities are inconsistent with the severity of her symptoms and address her most recent testimony regarding the decline in her activities.

**5. Conclusion**

 **IT IS THEREFORE ORDERED** that the decision of the Commissioner is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is remanded for further rulings consistent with this decision**.** The Clerk shall enter judgment accordingly.

 Dated at Milwaukee, Wisconsin this 11th day of February, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge